Thank you for calling Larson & Anderson, LLC, how may I help you? Extension 198, please. Thank you for calling. Hello, is this right? Mr. Anderson, this is Kimberly Moore of the Federal Circuit. We're calling you to participate in oral argument today. Are you prepared to move forward? I am, I am. Okay, I call then case 2012-1550, In re Brad Boozer. Mr. Anderson, you may begin. May I please report, this is Ron Anderson from Larson & Anderson. I am here today on behalf of TALENT. As first matter, I'd like to acknowledge a debt of gratitude to this court for providing the present accommodations in view of the travel situation of yesterday. In order to establish a prima facie case for obviousness, based upon a theory of routine optimization of the prior art, the USPTO needs to meet two primary analysis. The first primary analysis is that the USPTO must demonstrate that the parameter in question is disclosed in the prior art. The second primary analysis is that the USPTO must demonstrate that the parameter is a result effective variable that limits optimization. With regard to the first primary analysis, the USPTO again must demonstrate that the parameter range is disclosed in the prior art. To do this, we need to determine what the present claims say and what the prior art says. The present claims require a functionally and numerically significant shortening of the container wall so that the debt strips disclosed in the container can be individually manipulated in relation to the container. The USPTO, excuse me, and now we need to look at what the prior art says. Mr. Anderson? Mr. Anderson? Mr. Anderson? Hold on, Ms. Sturgeland has a question for you. Yes, is there anything critical in the angle of the wall? In other words, in the claim it calls for between the angle being 50 to 80 percent, is there anything critical to that angle? That's actually not the angle, that's specifically the length of the container compared to the length of the test strip. It does provide an angle, but the 50 to 80 percent is the length of the container. Yes, you're right, I stand corrected, but you see what my point is. It leads to an angularity, and the question I have is whether there's anything critical to those dimensions. With regard to critical, the shortening provides the ability of the user to manipulate the test strips. The test strips stick out of the container, and that provides the ability of the user to physically manipulate the test strips so they can remove one from the vial. If otherwise, without that shortening, if that shortening were not significant, to provide that effect, the user would then dump the test strips into the palm of their hand or onto the table, remove the single test strip, and return the rest of the test strips to the vial. But, I mean, the dimensions there, I mean, making the wall difference larger or smaller may have some impact on how convenient it might be to get to the test strips, but my question is, is there anything critical about how much of a difference there should be? I mean, the bigger the difference it would seem to be, the easier it would be to get the strips out, but that's about as obvious as it comes. Well, I think with regard to whether we're required to provide evidence of criticality or non-obviousness, we're not required to provide that type of evidence until the USPTO has established a prima facie case for obviousness. But isn't the prima facie... actually made the point of we need to be really careful when we're talking about simple technology. Okay, once you have a problem and solution put next to each other, well, sometimes the solution becomes evident. But doesn't the reference itself establish a prima facie case, because it does show the front wall being lower than the back wall? It does, but not with respect to the test strip, and that's what's presently planned. It does show, as you can see in Figure 4, it does show that there is a slanted opening, but then the test strip is not sticking out of the container. Okay, and the only place in SARS-CoV-2 that it discloses the length of the test strip compared to the length of the wall is Column 2, Lines 30-33. In practice, the length of the hole is selected such that it is not significantly larger or smaller than the test strip. Okay, the USPTO says that provides the general conditions of the claims. Because, the USPTO contends, SARS-CoV-2 discloses the test strip vial can be merely smaller than the test strip. But that's not what SARS-CoV-2 discloses. SARS-CoV-2 discloses that the test strip holder is not significantly larger or smaller than the test strips. Okay, and we need to consider the length not significantly, and the USPTO has not considered those. And instead, what we propose, and what the person in order to do, they look to the dictionary definitions of significantly. Okay, it has no effect. It's not important. Okay, the present claims do not fall within that range. Okay, the presently claimed limitations provide an effect. It is important. Moving on to the second part of the analysis, which the USPTO must meet in order to establish participation case for obviousness, is that the USPTO must demonstrate that the claimed parameter range is a result effective variable. The USPTO has not done that. The USPTO instead says that the result to achieve to get to the claimed wall height range is to reduce material of construction. Okay, if one were to optimize SARS-CoV-2, or SARS-CoV-2 were to optimize its disclosure to reduce material by reducing the wall height, the test strips would stick out of the container, and the lid would not close with the container. And that is required by SARS-CoV-2 for its test strip to be able to operate correctly. The sealing interaction of SARS-CoV-2 is between the underside of its lid and the orifice of the container. And when you make the test strip shorter than the test strip, you're going to hit the lid of the container, preventing it from closing. If you were to design around that, or optimize around that, you would need to increase the travel room of the test strip into the container space. Okay, if you were to do that, then you would be taking material from the reduction of the wall height and adding it to the lid to increase the travel room into the lid. That's not, doesn't meet the stated goal, the stated result of reducing material. Okay, it's not a result-effective variable. The last point I would like to make is that with regard to the not significantly shorter, longer caveat, convenience structure, the U.S. Museum has reconsidered that. They clearly say that applicants adopt a narrow interpretation of the words not significantly. However, they don't provide anywhere what their interpretation is. They say they've adopted another interpretation, but they fail to show what that is, other than to merely say it can't be shorter. Well, that's not, that's not good enough. The shorter needs to be considered as a whole for everything it teaches. It contains the words not significantly, and that's important. Also, with regard to those words, that provides the teaching away from the present intention. The present intention, like I said, requires a significant shortening of the container wall, and Sarsberg teaches that it cannot be a significant difference. Mr. Anderson, you're running into your rebuttal time. You may continue to proceed, or would you like to save it? I'll save it. Okay. We'll hear from the government now. Ms. Simpson? And if Mr. Anderson, if you have any trouble hearing, just type up and let us know and we'll ask her to speak up. May it please the Court. The prayer. Louder. Okay, thank you. May it please the Court. The prayer, in this case, teaches the tester container. It teaches that this tester container can have an oblique opening, and it teaches, therefore, that it can have a high wall and a low wall. It also teaches that the holder of the tester container can be shorter than the tester. What the commentators are seeking to claim, the reason that they are arguing it's different than the prior art, is that it claims that a particular percentage lower than the tester. The Board properly found that this was obvious based on the teachings in the prior art, and in particular, Sartre. It found in Sartre that the holder of the tester container could be shorter than the tester, and it also explained why the height of the holder could be optimized as a result-effective variable. These holdings are very clearly laid out in both the original and in the rehearing decision. What result is being discussed in Sartre about the difference in the height of the walls, if any? What the Board was relying on was the teaching in Sartre. It's right around the same phrase that you have in Sartre on page 249, and it's the phrase that's talking about not significantly higher or lower than the height of the test strips. The Board interpreting this sentence concluded that Sartre was indicating a preference for minimizing the amount of material being used, and their reasoning is that adjusting the height of the wall would result in less material. What does that have to do with convenience in terms of accessing the test strips? Because it seems to me that making the rear wall higher, making the front wall lower, affects the convenience of removing the test strips. But you can eliminate waste of material by making the rear wall lower and the front wall higher. I mean, any way you remove material is a savings of material. So I just don't know how saving material relates in any way to convenience of access by a differentiation between the front and rear wall. Your Honor, I think what happened here is that the examiner and the Board identified a different motivation for lowering the height of the wall. And we turn out that that ends up being convenient or not, but what they were holding is that one of ordinary skill would be elected to try and seek an optimization for this particular reason, reducing the amount of material used. I mean, it seems to me if Sartre had said something like the opening is at an angle to provide convenience of access and the angle could be any desired angle based on the desired result or something of that sort, then that's absolutely crystal clear that that's a result-oriented variable. But Sartre doesn't say a word about that. It only talks about it can be longer or shorter depending on whether you want to save material. I think following the teachings in KSR, the obvious in this case doesn't need to follow the exact same line of reasoning that the inventor in this case followed. So while Sartre may not have drawn that direct comparison, Sartre does talk about wanting to reduce the amount of material. And either route could end up leading to the same place, and that's what the Board found and then concluded that the claims would be obvious. I mean, I guess what I'm getting at is it seems to me that the line of cases dealing with result-oriented variables doesn't clearly apply here. It seems to me this is a little bit different, and I sort of sense reading between the lines that the Patent Office is really arguing that, well, this is just an obviousness case based on KSR. It's just a matter of common sense, and anybody would know that if you want to get access more easily, you just make the angle a little bit more. I think post-KSR results-affected variable line of cases aren't just a subset of obviousness cases, so they're another way of phrasing the inquiry you're supposed to make under KSR. Yeah, I agree, and I think that's the point I'm trying to make, because it seems to me that perhaps the Board and the Office may have elected to focus the arguments on this narrow subset of obviousness, the result-oriented variable line of cases, when that really doesn't quite fit, because the result-oriented issue is not set forth in the reference. The Board might have been better served by addressing the question of obviousness in the broadest sense according to KSR and not in the narrower result-oriented variable sense. And I think in this case, either logic could apply, and I think reading the result-affected variable line of cases broadly in light of KSR gets you to the same place that maybe perhaps a more straightforward analysis under KSR would do as well. If we were of the view that the result-oriented variable cases don't apply here and the reasoning of the Board was not appropriate, but yet the claim to invention appears to be obvious in light of CSR under a broader reading of KSR, do we have a Chenery problem affirming on that basis? I don't think so, Your Honor, because I think the factual findings on this record that the Board made are also pretty clear. I don't think that that would allow obviousness as a legal conclusion to be based on the grounds that were broadly laid out by the Board. I wonder why the Patent Office didn't cite another reference like maybe the, I'm showing my age here, but the Marlboro box, the flip-top box, to get cigarettes out of the box more easily because it's inclined? Yes, Your Honor. Well, we have the record we have. Well, and that's your problem, though. Yes, Your Honor. It's not that. I think between the teachings of Starcher with its opening cut at an oblique angle and the fact that it talks about the test scripts can actually be shorter than the height of the holder, between the two of those and the explanation that's actually been provided by the Board for wanting to reduce it, I think that that is the vision. Perhaps there's a better reference out there, but this one still does the job with that reasoning. The Court has no further questions. I will do an intercession. Thank you, Ms. Simpson. Mr. Anderson, you have some rebuttal time. Thank you very much. With regard to Judge Lin's comment regarding whether a proper analysis would have been an application of strictly KSR without using the routine application line of KSR, well, I would submit that, you know, even in the view of Starcher, you have a teaching that the wall height is not significantly lower than the test script. Therefore, the Marlboro cigarette box, or something to that effect, did not provide, Starcher did not provide that limitation, and the cigarette box is a cubical item. It's not cut at an oblique angle, which is what is required. You have a box, and then you have an opening, and et cetera. But more importantly, we have the record we have. The USPTO has indicated and applied, misapplied, the result effect of variable line cases, as well as the mere optimization of the prior art. So, these line cases require the identification of where the variable is disclosed in the art, and two, that it's a result effective variable. It is not a result effective variable, according to Starcher. The USPTO hasn't identified it otherwise. Instead, I would submit that the analysis made by the USPTO is a post facto analysis. They looked at the present dimension and said, well, that's got to be obvious. And they turned around and then only tried to figure out why it would be obvious. The answer, routine optimization. Let's shorten them all by reducing. And therefore, we can reduce material, and that's got to be it. And that's what they put forth is not correct. And applicants, I would request this court to overturn the USPTO's decision. Okay, thank you, Mr. Anderson. I thank both counsel for the argument. The case is submitted. This concludes our day, so I'm going to hang up on you now, Mr. Anderson, okay? Thank you very much. Very good. All rise.